# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT COHEN, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| v. | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| LYDALL, INC., DAVID G. BILLS, JAMES J. | ) **THE FEDERAL SECURITIES LAWS** |
| CANNON, MARC T. GILES, PAUL W. | ) |
| GRAVES, SARA A. GREENSTEIN, | ) |
| SUZANNE HAMMETT, and KATHERINE C. | ) **JURY TRIAL DEMANDED** |
| HARPER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Robert Cohen ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE THE ACTION

1. Plaintiff brings this action against Lydall, Inc. ("Lydall" or the "Company"), and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Unifrax Holding Co. ("Unifrax") will acquire the Company through Unifrax's subsidiary Outback Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party Unifrax is headquartered in Tonawanda, New York and is backed by Clearlake Capital Group, L.P. ("Clearlake"). Non-party Clearlake is an investment firm founded in 2006 that operates integrated businesses across private equity, credit and other related strategies. Clearlake has offices in Santa Monica, California and Dallas, Texas. Non-party Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of Unifrax.

2. On June 21, 2021, Lydall and Unifrax jointly announced their entry into an Agreement and Plan of Merger dated June 21, 2021 (the "Merger Agreement") to sell Lydall to Unifrax. The Merger Agreement provides that Lydall stockholders will receive $62.10 in cash for each share of Lydall common stock they own (the "Merger Consideration").[2]

3. On August 10, 2021, Lydall filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. The failure to adequately disclose such material information violates Sections 14(a) and 20(a) of the Exchange Act as Lydall stockholders need such information to make a fully informed decision whether to approve the Proposed Transaction, among other things.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual

---

[2] The approximate value of the Proposed Transaction is $1.3 billion.

2

with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Lydall.

10. Defendant Lydall is a Delaware corporation with its principal executive offices located at One Colonial Road, Manchester, Connecticut. Lydall's common stock trades on the New York Stock Exchange under the ticker symbol "LDL."

11. Defendant David G. Bills ("Bills") has been a director of the Company since 2018.

12. Defendant James J. Cannon ("Cannon") has been a director of the Company since 2017.

13. Defendant Marc T. Giles ("Giles") has been Chairman of the Board since 2017 and a director of the Company since 2008.

14. Defendant Paul W. Graves ("Graves") has been a director of the Company since April 2021.

15. Defendant Sara A. Greenstein ("Greenstein") has been President and Chief Executive Officer ("CEO") of the Company since November 2019, and a director of the Company since 2019.

16. Defendant Suzanne Hammett ("Hammett") has been a director of the Company since 2000.

17. Defendant Katherine C. Harper ("Harper") has been a director of the Company since April 2021.

18. Defendants identified in paragraphs 11-17 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On June 21, 2021, Lydall and Unifrax jointly announced in relevant part:

TONAWANDA, N.Y. and MANCHESTER, Conn., June 21, 2021 -- Unifrax, a leading global provider of high-performance specialty materials focused on thermal management, specialty filtration, battery materials, emission control and fire protection applications backed by Clearlake Capital Group, L.P. ("Clearlake"), today announced it has signed definitive agreements to acquire Lydall, Inc. (NYSE: LDL, "Lydall" or the "Company"), a leader in the design and production of specialty filtration materials and advanced material solutions. With its leading technologies and 23 manufacturing facilities around the world, Lydall is well positioned to capitalize on growth in clean air filtration and electric vehicle adoption, among many other attractive markets. Under the terms of the agreement, Lydall shareholders will receive $62.10 per share in cash for each share outstanding, implying a total enterprise value of approximately $1.3 billion.

"The combination of Unifrax and Lydall creates a global specialty materials platform with new cutting edge technologies in advanced filtration, electric vehicle battery systems, and energy saving applications," said John Dandolph, President and CEO of Unifrax. "The addition of Lydall's people, technologies, and assets to the Unifrax portfolio will help accelerate our innovation pipeline and creates a world class platform capable of solving the world's most pressing energy consumption, environmental and filtration challenges. We are excited to partner with a company that is similarly focused on our commitment to a Greener, Cleaner, and Safer® world."

Sara Greenstein, President and CEO of Lydall, added, "We are excited about the combination of Lydall and Unifrax. With this transaction, we are creating a leader in specialty filtration and advanced materials with over 250 years of combined expertise and experience delivering innovative and compelling solutions to customers worldwide."

"We have long admired Lydall and what it would bring to our platform investment in Unifrax, and could not be more excited about partnering with the Company and its team to build one of the world's leading global specialty materials platforms," said José E. Feliciano, Co-Founder and Managing Partner at Clearlake, and Colin Leonard, Partner at Clearlake, in a joint statement. "We have supported Unifrax's development of new technologies over the last few years that have the potential to change how we think about the industries in which both Unifrax and Lydall operate and inform their futures. The addition of Lydall to the Unifrax portfolio and its strong capabilities in advanced filtration creates a global platform with significant scale that together can accelerate each company's respective compelling growth plans."

BofA & Co. LLC acted as lead financial advisor, J.P. Morgan acted as financial advisor, and Kirkland & Ellis acted as legal counsel to Unifrax in the transaction. BofA Securities is acting as exclusive financial advisor, and Davis Polk & Wardwell LLP is acting as legal counsel to Lydall in connection with the transaction.

**The Proxy Statement Contains Material Misstatements and Omissions**

20. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Lydall's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

21. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor BofA Securities, Inc. ("BofA"); and (b) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections and BofA's Financial Analyses*

22. The Proxy Statement omits material information regarding the Company's financial projections, including failing to disclose all line items underly the calculation of Adjusted EBITDA for both the "Strategic Plan Case" and "Aspirational Case" Projections disclosed in the Proxy Statement. The Proxy Statement also admits the line items underlying the "Strategic Plan Case" projections for unlevered free cash flow.[3]

23. The Proxy Statement also fails to disclose material information concerning BofA's financial analyses.

24. The Proxy Statement describes BofA's fairness opinion and its underlying analyses,

---

[3] Similarly, the Proxy Statement wrongly omits the assumptions underlying Lydall management's "Aspirational Case" projections.

5

but fails to disclose material information related thereto. That description, moreover, fails to include key inputs and assumptions underlying these analyses. The absence of this information precludes Lydall stockholders from understanding these analyses and properly assessing BofA's fairness opinion in deciding how to vote with respect to the Proposed Transaction or otherwise proceed.

25. With respect to BofA's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

26. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (a) the individual multiples and financial metrics for each of the transactions analyzed; and (b) Lydall's LTM estimated Adjusted EBITDA.

27. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) Lydall's fiscal year 2025 estimated EBITDA;[4] (b) the terminal values of the Company; and (c) the inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%.

28. With respect to BofA's analysis of stock price targets for Lydall, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

29. The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Lydall's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

30. The Proxy Statement omits material information regarding potential conflicts of interest faced by Company insiders, including whether any of Lydall's executive officers are continuing their employment following consummation of the Proposed Transaction, as well as the

---

[4] The projections set forth on page 49 of the Proxy Statement disclose 2025 *Adjusted* EBITDA. The Proxy Statement must quantify Lydall's 2025 estimated EBITDA or clarify whether BofA used Lydall's 2025 Adjusted EBITDA to calculate the terminal value for the Company.

6

details of all employment and retention-related discussions and negotiations that occurred between Unifrax, Clearlake and Lydall's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Unifrax's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction.

31. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

32. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Lydall's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

33. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Lydall stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

34. Plaintiff repeats all previous allegations as if set forth in full.

35. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

36. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, BofA's financial analyses and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

38. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

39. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. The Individual Defendants acted as controlling persons of Lydall within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Lydall, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a

direct and proximate result of defendants' conduct, Lydall's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Lydall, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Lydall stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 24, 2021          **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*